(990 P.2d 163)
No. 80,079

DEREK HASKELL, *Appellee,* v. STAUFFER COMMUNICATIONS, INC., *Appellant.*

—

Opinion filed October 8, 1999.

*Michael W. Merriam,* of Gehrt & Roberts, Chartered, of Topeka, for appellant.

*Scott G. Hattrup,* of Overland Park, for appellee.

Before BRAZIL, C.J., C. FRED LORENTZ and D. KEITH ANDERSON, District Judges, assigned.

ANDERSON, J.: Appellant Stauffer Communications, Inc., appeals the verdict of $2,500 in favor of appellee Derek Haskell for invasion of privacy arising out of the publication of a news article in the Dodge City Globe.

On September 2, 1994, the Dodge City Globe printed an article with the headline, "WANTED - Recent poster evokes memories of town's Wild West era." The article reported the appearance within Dodge City of posters resembling old-fashioned "Wanted" notices, which bore a photograph of Haskell. The text of the poster revealed his penchant for carrying unconcealed weapons in public, suggested he should be incarcerated or committed, listed various news articles and law enforcement·agencies to which one could refer for more information, and suggested a reward.

The news article included a picture of the poster. The news article clarified that Haskell was not wanted by law enforcement and that carrying unconcealed weapons is legal. It included statements from the Dodge City police chief discussing Haskell's legal but frightening behavior and mentioning the context of the Dodge City wild west image.

On August 31, 1995, Haskell sued Ted Harbin, the reporter; Stauffer Communications, Inc., owner of the Dodge City Daily Globe; and John Doe and Richard Roe for defamation, outrage, and infringement of his constitutional right to bear arms. John Doe and Richard Roe are defendants whose names are unknown by Haskell. They are charged with printing, publishing, and displaying the posters. Later, Haskell amended the petition to include an invasion of privacy claim. Following a May 1997 trial, a jury awarded Haskell $2,500 on a misappropriation of name or likeness claim, one of the four bases for invasion of privacy recovery enumerated in PIK Civ. 2d 14.61.

Stauffer argues the district court failed to properly instruct the jury on the misappropriation claim.

" ' "It is the duty of the trial court to properly instruct the jury upon a party's theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal." ' " *In re Care & Treatment of Hay*, 263 Kan. 822, 841-42, 953 P.2d 666 (1998) (quoting *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 12, 899 P.2d 1013 [1995]).

The court, after a jury instruction conference, decided to use the pattern instructions for the invasion of privacy claim. PIK Civ. 2d 14.61 states in part:

"The right of privacy is invaded if another:

[Intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns and if the intrusion would be highly offensive to an ordinary man;]

[Appropriates to his own use or benefit the name or likeness of another;]

[Publicizes matters of a kind highly offensive to an ordinary man concerning the private life of another;]

[Publicizes matters which places another before the public in a false light of a kind highly offensive to an ordinary man.]"

Plaintiff's amended petition claimed invasion of privacy on three of the four different theories recognized in Kansas: (1) intrusion

upon seclusion, (2) appropriation of name or likeness, and (3) false light publicity.

At the jury instruction conference, Stauffer challenged this instruction as not a proper statement of the law. It argued the misappropriation claim should include the newsworthiness privilege and commercial limitation recognized in other jurisdictions. It offered the following alternative instruction:

"In order to recover for that aspect of Plaintiff's invasion of privacy claim for appropriating Plaintiff's name or likeness, Plaintiff has the burden of proving each of the following propositions:

1. That the Plaintiff's name or likeness was exploited by the Defendant; and
2. That the exploitation resulted in gain to the Defendant.

"The gain to the Defendant must be more than the gain that comes from selling additional issues of the publication in which the name or likeness appeared.

"It is a defense to a claim for appropriation that the use of the name or likeness was in connection with communications about matters of legitimate public interest."

The court declined to use this instruction. It decided to use the PIK instruction. "If the particular facts in a given case require modification of the applicable pattern instruction, or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed." *State v. Moncla*, 262 Kan. 58, Syl. ¶ 5, 936 P.2d 727 (1997).

Instruction No. 15 given at trial did not match PIK Civ. 2d 14.61. At the jury instruction conference, the court read back Instruction No. 15. It mirrored PIK Civ. 2d 14.61 except it omitted the misappropriation language. Neither party appeared to catch the oversight. The record does not provide any explanation for the omission; it appears, however, the omission was unintentional. The parties and the court intended for the misappropriation language to be included in the instruction as evidenced by the discussion about that part of the PIK.

The verdict form stated:

"2. Appropriation of Name of [*sic*] Likeness

We, the jury, impanelled and sworn in the above entitled case, do, upon our oaths, find for the plaintiff Derek Haskell on his claim for Appropriation of Name or Likeness and assess his damages at $2,500."

That verdict form language labeled the tort, but did not define it.

Stauffer contends the misappropriation instruction should mention the commercial nature of the tort, the right of publicity aspect of the tort, the newsworthiness privilege, and that selling additional copies of newspapers is not sufficient economic gain to the defendant. Stauffer argues that without the additional instruction, the jury arrived at a verdict contrary to the law applied to the evidence at trial. We agree.

The noncommercial publication of matters of public interest by a newspaper is privileged and not subject to an invasion of privacy claim of "misappropriation."

The appellate courts of Kansas have not before addressed this issue. The origin of this theory of liability and its application in other jurisdictions supports an instruction on the newsworthiness privilege and the limitation to commercial cases.

Case law from other jurisdictions supports giving a jury instruction indicating that an action based on misappropriation is limited to misappropriation for a commercial use. Courts routinely review claims based on a codified right of privacy. These statutes often require that the misappropriation be for advertising or for purposes of trade before there is liability. See *Tropeano v. Atlantic Monthly Co.*, 379 Mass. 745, 400 N.E.2d 847 (1980); *Murray v. New York Mag. Co.*, 27 N.Y.2d 406, 318 N.Y.S.2d 474, 267 N.E.2d 256 (1971); *Martinez v. Democrat-Herald Publishing Company, Inc.*, 64 Or. App. 690, 669 P.2d 818, *rev. denied* 296 Or. 120 (1983). Additionally, PIK Civ. 2d 14.61 mirrors Restatement (Second) of Torts § 652A (1977). *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993 (1973) (Restatement definition of invasion of privacy adopted by Kansas). Restatement (Second) of Torts § 652C, comment d (1977), states:

"The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the

commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness."

The facts of this case indicate the lack of an instruction regarding the commercial nature of this tort misled the jury. Consequently, the district court erred in refusing to instruct the jury on this limitation.

Several jurisdictions also recognize a newsworthiness privilege. See, *e.g.,* Cal. Civ. Code § 990 (West 1999 Supp.). The United States Supreme Court has held protection from invasion of privacy gives way to the right of the press to publish matters of public interest. *Time, Inc. v. Hill,* 385 U.S. 374, 384, 17 L. Ed. 2d 456, 87 S. Ct. 534 (1967). To avoid a collision between rights, some jurisdictions have recognized First Amendment protection against misappropriation claims for a person's name or likeness appearing in news articles. If a communication is about a matter of public interest and there is a real relationship between the plaintiff and the subject matter of the publication, the matter is privileged. *Ault v. Hustler Magazine, Inc.,* 860 F.2d 877, 880 (9th Cir. 1988), *cert. denied* 489 U.S. 1080 (1989); *Lane v. Random House, Inc.,* 985 F. Supp. 141, 146 (D.D.C. 1995); see generally Annot., 30 A.L.R.3d 203, 222-32.

The cases uniformly apply the newsworthiness privilege to matters published by the media even though they are published to make a profit. See *Jenkins v. Dell Publishing Company,* 251 F.2d 447 (3rd Cir. 1958); *Mendonsa v. Time, Inc.,* 678 F. Supp. 967 (D.R.I. 1988); *Guglielmi v. Spelling-Goldberg Productions,* 25 Cal. 3d 860, 160 Cal. Rptr. 352, 603 P.2d 454 (1979); *Stephano v. News Group Pub.,* 64 N.Y.2d 174, 485 N.Y.S.2d 220, 474 N.E.2d 580 (1984).

The privilege extends to matters about private individuals that are of interest to the public. *Bernstein v. National Broadcasting Company,* 129 F. Supp. 817 (D.D.C. 1955); *Everett v. Carvel Corp.,* 70 Misc. 2d 734, 334 N.Y.S.2d 922 (1972).

The facts in this case establish the article was of legitimate public concern. The Dodge City Globe reported the placement of odd posters throughout the city. The article addressed possible public questions or concerns about the content and reason for the posters. There also existed a public safety interest in knowing who is carrying weapons in the open.

Because the article was a matter of legitimate public concern and because Haskell was the focus of the posters, the lack of instruction regarding the newsworthiness privilege misled the jury. Thus, the district court erred in refusing to include this privilege in the instructions.

The verdict and judgment of the district court is reversed. It is ordered that judgment be entered in favor of defendant Stauffer Communications, Inc., as a matter of law.